[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-16657
Non-Argument Calendar

_____

D.C. Docket  No. 03-00413-CR-T-27MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MYKAEL Y. SPRAGUE,
a. k. a. Mykael Y. Deville,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 13, 2006)**

Before EDMONDSON, Chief Judge, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Mykael Y. Sprague appeals her convictions and 33-month concurrent sentences for conspiracy to commit wire fraud, 18 U.S.C. § 371, and wire fraud, 18 U.S.C. § 1343. This case is about Sprague's role in a multi-million dollar Ponzi scheme involving the sale of fraudulent bank investments. No reversible error has been shown; we affirm.

Sprague argues that the district court erred in denying her motion to dismiss the indictment. She asserts that her right to a speedy trial under the Sixth Amendment was violated when the government delayed almost three and a half years from filing an information against her, in February 2000, until it filed the indictment in October 2003. Sprague's Sixth Amendment right, are not implicated by this delay. The record shows that the February 2000 information was dismissed in May 2000 on Sprague's motion after her failed attempt to plead guilty to the information. The government supported Sprague's motion because it could not proceed with its prosecution of Sprague absent her waiver of indictment, which it could not obtain. Sprague points to no evidence showing that the government acted in bad faith on the dismissal of the information. No charges were pending against Sprague from May 2000 until the filing of the October 2003 indictment: Sprague's speedy trial guarantee did not apply during this time. See United States v. MacDonald, 102 S.Ct. 1497, 1501-02 (1982).

Sprague next argues that the government failed to present enough evidence that she knew of or voluntarily entered into a scheme to defraud. She contends that the evidence showed only that she was an unknowing and minimal contributor to an investment business that she thought was legitimate.

We review challenges to the sufficiency of the evidence de novo. United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003), cert. denied, 124 S.Ct. 2195 (2004), 125 S.Ct. 1366 (2005). We view the record in the light most favorable to the verdict; we draw all reasonable inferences and we resolve all questions of credibility in favor of the government. Id.

To prove a conspiracy under 18 U.S.C. § 371, the government must show (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." Id. "To prove a conspiracy to commit wire fraud, . . . it is enough to prove that the defendant knowingly and voluntarily agreed to participate in a scheme to defraud and that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable." Id. The elements of wire fraud under 18 U.S.C. § 1343 are (1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." Id. "A scheme to defraud requires proof of material misrepresentations, or the

3

omission or concealment of material facts, reasonably calculated to deceive persons of ordinary prudence." Id. at 1270-1271 (internal quotation marks omitted).

Sufficient evidence supports Sprague's convictions. First, the evidence showed that she intentionally participated in a scheme to defraud. Evidence exists that she helped to recruit people to invest in Private Pool, L.L.C. (the illegitimate bank trading program), and, in doing so, failed to inform investors of information she received indicating that Private Pool was a Ponzi scheme and that the Securities and Exchange Commission was investigating it. In addition, trial evidence showed that Sprague tried to influence Richard Fulcher (a former broker who was recruited into the scheme by Sprague and her former husband, Jeff DeVille) and Jerry and Bobbie Rendel (whom Sprague and DeVille also recruited to invest in the scheme) to lie about the nature of the investment program. Sprague points to defense evidence--including her trial testimony--supporting her version of the events. But the jury was entitled to reject her testimony. See United States v. Vazquez, 53 F.3d 1216, 1225-26 (11th Cir. 1995) (jury entitled to reject defendant's explanation and conclude that opposite is true).

Second, the evidence showed that interstate wires were used in furtherance of the scheme. And because of the nature of the scheme--the wiring of money to

4

and from domestic and offshore accounts--use of interstate wires to further the scheme was reasonably foreseeable.

Sprague next challenges the district court's loss calculation, U.S.S.G. § 2F1.1 (1998).[1] She first contends that she should have been held liable for no loss in this case because she lacked knowledge that a fraud was occurring. We reject this argument: evidence shows that she did knowingly participate in a scheme to defraud.

Sprague alternately contends that she only should be held accountable for the amount of loss incurred by victim Darren Daulton ($811,325), where the original indictment only charged her with Daulton's loss and where she was found guilty of Daulton's losses. She asserts that the court acknowledged that she was the least culpable of the participants in the conspiracy, and she argues that she should not be held liable for the lost investments brought in by Fulcher, since DeVille was not held accountable for those losses.

The district court committed no clear error in its loss determination. Sprague's offenses involved a jointly undertaken criminal activity. And because the scheme involved the recruitment of investors, it was reasonably foreseeable that Fulcher and DeVille would cause persons to invest money. So, Sprague's

---

[1] We review a district court's determination of loss from fraud for clear error. United States v. Liss, 265 F.3d 1220, 1230 (11th Cir. 2001).

5

relevant conduct included (1) amounts she personally caused to be invested and (2) amounts DeVille and Fulcher caused to be invested. See U.S.S.G. § 1B1.3(a)(1)(B) (1998). The court, thus, correctly determined that Sprague was responsible for monies obtained from Daulton and from the other victims who invested through Fulcher. This amount totaled $ 2,369,825, which corresponds to the district court's imposition of a 14-level enhancement. See U.S.S.G. § 2F1.1(b)(1)(M). In addition, the court did not clearly err in setting Sprague's restitution amount: the total amount of loss, less the amount recovered by Daulton.

Sprague also challenges the district court's denial of her request for a minor role reduction, U.S.S.G. § 3B1.2(b). We review a district court's determination of a defendant's role in an offense for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant bears the burden of establishing a mitigating role in the offense by a preponderance of the evidence. Id. at 939. Sentencing courts should consider two principles when determining the defendant's role in the offense: "first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct." Id. at 940.

The district court did not clearly err in denying Sprague a minor role reduction. Her role was not minor compared to the conduct for which she was

6

held accountable. The evidence showed that Sprague helped to recruit investors, helped to devise a plan to continue the scheme after the SEC became involved, and encouraged others to assist in covering up the scheme. Under these facts, we need not proceed to the second De Varon inquiry. See id. at 945 (recognizing that first inquiry may, in many cases, be dispositive). We see no error in the district court's refusal to apply a minor role reduction.

Sprague next argues that the district court committed error under United States v. Booker, 125 S.Ct. 738 (2005), by sentencing her under a mandatory guidelines system. Sprague concedes that she did not raise this issue before the district court: we review this claim for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert.denied, 125 S.Ct. 2935 (2005).[2]

We recognize two kinds of Booker error: 1) constitutional error resulting from enhancements based on impermissible judicial fact-finding, and 2) statutory error resulting from application of the guidelines in a mandatory fashion. United States v. Shelton, 400 F.3d 1325, 1330-1331 (11th Cir. 2005). The government concedes that both kinds of Booker error occurred and that the errors were plain. But Sprague cannot show that these errors affected her substantial rights: we see

---

[2]On plain error review, a defendant must show "error" that is "plain" and that "affect[s] substantial rights." United States v. Olano, 113 S.Ct. 1770, 1776 (1993). It is only after these conditions have been satisfied that an appellate court then may exercise its discretion and correct the error if it seriously affects the fairness, integrity or public reputation of the judicial proceedings. Id.

no indication in the record that the district court would have sentenced her differently had it applied the guidelines as advisory. The district court may have expressed some misgivings about the adequacy of certain provisions of the guidelines. But the court directed its comments to the way in which the guideline range was calculated, not to the adequacy of the actual applicable guideline range. Once the court determined the applicable guideline range, the court gave no indication that it believed a sentence within that range was inappropriate or inadequate. And the court sentenced Sprague to the high end of the applicable guideline range. Sprague has not shown "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion." Rodriguez, 398 F.3d at 1301. She, thus, has failed to establish prejudice, the third element of plain error review.

Sprague also argues that her sentence is unreasonable. She asserts that she had no criminal history and that she was the least culpable among the charged participants.[3] After the district court has calculated the Guideline range accurately, the court may impose a more severe or more lenient sentence that we

_____

[3]We have rejected the government's contention that we lack jurisdiction to consider the reasonableness of a sentence within the guideline range. See United States v. Martinez, 434 F.3d 1318, 1322 (11th Cir. 2006) (concluding that appellate jurisdiction exists to review sentences for reasonableness under 18 U.S.C. § 3742(a)(1)); United States v. Talley, 431 F.3d 784, 786-787 (11th Cir. 2005) (rejecting argument that sentences within applicable guideline range are per se reasonable).

review for reasonableness. <u>United States v. Winingear</u>, 422 F.3d 1241, 1244-1245 (11th Cir. 2005) (internal quotations omitted). The factors in 18 U.S.C. § 3553(a) guide our review of the reasonableness of a sentence. <u>Id.</u> at 1246.

We cannot say that Sprague's 33-month sentences are unreasonable. Although the district court did not explicitly discuss the § 3553(a) factors, courts are not required to do so. <u>See</u> <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005). The sentences were within the applicable guideline range; and the sentences were well under the statutory maximum sentences. The guidelines accounted for her criminal history, and the district court considered her relative culpability. The record also shows that the court considered, among other things, the circumstances of the offense and Sprague's history and characteristics when it considered and granted her motion for downward departure.

In sum, we see no reversible error either in Sprague's convictions or in her sentences.

AFFIRMED.